UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, | Case No. 20CR3235-JAH(DEB<br>Case No. 20CR3236-JAH(DEB) |
| VS. | San Diego, California |
| TODD MATTHEW JOHNSON, Defendant. | Thursday,<br>November 5, 2020<br>10:55 a.m. |

TRANSCRIPT OF DETENTION HEARING
BEFORE THE HONORABLE DANIEL E. BUTCHER
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government: CONNIE WU
Assistant U.S. Attorney
880 Front Street
San Diego, California 92101

For the Defendant: EZEKIEL E. CORTEZ
Attorney at Law
550 West C
Suite 620
San Diego, California 92101

Transcript Ordered by: EZEKIEL CORTEZ, CJA

Transcriber: Cameron P. Kircher

Proceedings recorded by electronic sound recording; transcript produced by transcription.

San Diego, California - Thursday, November 5, 2020

10:55 a.m.

THE CLERK: Calling Matter 26, 20CR3235 and 20CR3236, U.S.A. vs. Todd Matthew Johnson.

MR. CORTEZ: Good morning, your Honor. Ezekiel Cortez on behalf of Mr. Johnson, who is present via videoconference.

Hello, Todd.

THE DEFENDANT: Hi. How are you?

MR. CORTEZ: I'm very good. First time I get to see you. I've spoken to your entire family already.

THE DEFENDANT: Yeah. I'm fully aware of that, and I'm totally confident in you to make the right choice right now.

MR. CORTEZ: Thank you.

MS. WU: Good morning, your Honor. Connie Wu on behalf of the United States.

THE COURT: Thank you. Good morning, Counsel.

Mr. Cortez, as part of your conversations, have you spoken to Mr. Johnson about his right to appear in person? Is he prepared to waive for today's purposes and proceed by video?

MR. CORTEZ: I have not. This is the very first time I've seen him, but he consents I know through the family who told me that.

THE DEFENDANT: Yes, I consent.

THE COURT: And I understand, Mr. Johnson, that you've spoken to likely an attorney from Federal Defenders about this as well, right, about your right to appear in person?

THE DEFENDANT: Yeah. Yes, your Honor.

THE COURT: Okay. Thank you. Based on your consent, we will proceed by video.

This is the time --

THE DEFENDANT: Thank you.

THE COURT: -- set for Mr. Johnson's detention hearing.

Mr. Cortez, are you ready to proceed with the hearing, sir?

MR. CORTEZ: I am, your Honor.

THE COURT: Thank you. Ms. Wu.

MS. WU: Yes, your Honor.

The government has moved to detain based on both serious risk of flight as well as danger to the community. This is a presumption case, and Mr. Johnson has been charged with a ten-year mandatory minimum. He is not safety-valve eligible, and even without the ten-year mandatory minimum, his low end of the guidelines is over ten years.

The evidence in this case, while the least significant factor, is overwhelming. This stems from a

long-term investigation into white supremacist gangs in San Diego.

And the charges are based on wiretaps and physical surveillance and controlled purchases that were conducted on November 16th of 2018, December 13th of 2018, February 19th of 2019, March 29th of 2019 and May 1st of 2019. In each case, the quantities of methamphetamine that were being distributed were usually one ounce, or on the last one that I mentioned in May of 2019, was a purchase of six ounces of methamphetamine from Mr. Johnson.

The United States recognizes that he has several factors that would weigh in favor of a bond in this case, and I just want to take a quick moment to acknowledge those factors before I focus on why the United States believes so strongly that the presumption cannot be rebutted in this case.

He has apparently excellent physical and mental condition. He has lifelong ties to this district. His family and children are here. He has been employed for apparently at least ten years. And his father has already offered to be a surety for him, and that he has a significant amount of money from the documents I've seen from Mr. Cortez. He, I believe, owns his home and also has over $100,000 in cash in his bank account.

THE COURT: You're referring to the father?

MS. WU: Yes. The potential surety that was proposed to me over e-mail. But I'm sure Mr. Cortez can comment further on that.

MR. CORTEZ: I will. I will.

MS. WU: He has lived in San Diego his entire life, and Pretrial Services did not know of any drug or alcohol abuse. He does not have, to the government's knowledge, failures to appear in court.

However, speaking to the other factors, most notably, character, past conduct and criminal history. I would note that Mr. Johnson is the shot-caller for the Supreme Power Skins, which is a white supremacist group here in San Diego with a very violent reputation.

This gang, as well as other gangs that he associates closely with, all answer to the Aryan Brotherhood, which is the primary controlling white supremacist gang, started out as a prison gang, but now has influence outside of prison as well through subordinate gangs like SPS.

Through the course of several wiretaps and through wire and electronic intercepts, as well as physical surveillance, the United States was able to determine that he also goes by the -- he goes by a Facebook profile name by the name Bobby Himmler, which the United States believes is a reference to a -- the highest-ranking commander in the SS in Nazi Germany, and he was the leading architect of the

Holocaust. That is an account that he uses and that belongs to him.

With respect to his past conduct, he does have criminal history that makes him ineligible for safety valve. And looking at not just his convictions, but also his arrests, he clearly has a history of violence.

He has a conviction from 2000 for grand theft from a person. He received two years for that. He has a robbery conviction from 2002 for which he received three years. And he also has a misdemeanor driving related in 2011. And he has one probation revocation that resulted in a prison commitment of two years, and that was back in 2000; recognizing that that was a long time ago.

However, his conduct is extremely alarming for the government and involves a significant amount of violence. And this is information that the Pretrial Services officer would not have had access to and so, you know, could not have factored into their analysis on their bail recommendation.

But on May 18th of 2019, Mr. Johnson learned that an assault had occurred on an Aryan Brotherhood main member in San Diego by the Peckerwoods Outlaw Motorcycle Gang, and that assault occurred at a Harley-Davidson Motorcycle dealership.

When he learned that this assault had occurred to his close associate, he reached out to several gang members and associates to meet him at the assault location. He

discussed the fact that he was armed with a gun as he was going, that he was racing over at -- driving over 95 miles per hour to get there, that he couldn't wait and that he said, "I want blood."

As a result, a lot of law enforcement was deployed to the area and made their presence known, and luckily no assault occurred. And the investigators attribute that to the strong law enforcement presence at the scene.

Another specific incident that the government is aware of is from June of 2019. In this case, Johnson initially began as a victim of an assault, but obviously escalated from there. He was intentionally rammed by another -- by a gang member who believed that Mr. Johnson was somebody else. And this assailant believed that he was getting revenge on another individual that had assaulted him. When he rammed Mr. Johnson's vehicle and they pulled over, the other individual had a baseball bat and Mr. Johnson pulled out a knife.

Now, in that situation, it does obviously sound like he was not the instigator, but to get revenge, he, Mr. Johnson, recruited nine comrades and gang members who then subsequently all came to his residence and they were determined to hunt down his assailant.

And in the surveillance of the individuals that arrived, it was clear that these were gang members and at

least one of them had recognized neo-Nazi paraphernalia. He was wearing a shirt with the signature SS lightening bolts.

This individual appears to have been spared only by the simple fact that they couldn't find him on this evening. And what they did find instead was his motorcycle, and they ended up stealing that motorcycle and discussed further plans to exact their vengeance.

So it is for these reasons that the government believes that there are no conditions or combination of conditions that could reasonably assure his appearance as well as assure the safety of the community.

And I think it's important to note in this context that safety of the community -- that danger to the community is not defined by a threat of violence, per se, though Mr. Johnson obviously has engaged in or sought out violence, if not engaged in violence based on his past conduct and criminal history, but his drug trafficking is itself a danger to the community, his repeated drug trafficking is a danger to the community, and that is something that multiple circuits have acknowledged.

And in, you know, many instances, we will hear from the defense bar, oh, but it's such a small amount of drugs compared to what you see coming across the border, 45 kilograms there, 100 kilograms there. But then what we also hear from defense is that those people were just couriers.

They were not drug dealers. They were not distributors. They are not the ones that are dealing the poison in our communities. And here Mr. Johnson is a dealer, he is a distributor, and that is something he does frequently.

And so it is for these reasons that the government is seeking detention on both grounds.

THE COURT: Thank you, Ms. Wu.

Mr. Cortez.

MR. CORTEZ: Thank you.

Without having a mini jury trial before the Court and focusing on the actual facts that are before the Court, the Pretrial Services report, which has all the good information that government Counsel was kind enough to admit, I will first focus on the actual indictment before the Court.

But before I do so, I'd like to ask the Court not to take into account allegations by the government of neo-Nazi memberships, of white supremacists memberships, because those issues I would say are unconstitutional when you consider them in setting bail for individuals.

I've represented a variety of gang members; many of them made bail. So right now, I really believe that those are just allegations, and I know they are just allegations, and let me tell you how I know.

The indictment that's actually before the Court, both indictments, do not have any of these allegations of

violence. From government counsel's allegations -- and that's all they are right now -- the incidents she lists of violence from May and June 2019, they could have been charged in a federal indictment, but they were not.

So the charges that are before the Court, the subject matter for the bail and the detention issue are rather routine. They are one, two, three, four, several instances that go back two years, two years ago. They have specific instances where they allege Mr. Johnson sold or distributed relatively small amounts, relatively small amounts to individuals, and that's pretty much what the indictment alleges.

Before the Court is whether bail should be set for an individual who's charged with a series of less than ten sales that go back two years ago. That's the real indictment before the Court.

The second indictment alleges something very weird. You and I go back a very long time. So why do I say that? Because I know a little bit of federal law. The second indictment that was secret alleges aiding and abetting a felon in the possession of a weapon.

Mr. Johnson himself, as the government argues, is a felon. Yet, that indictment does not charge Mr. Johnson with actual possession as a felon of a gun or a firearm, just aiding and abetting. That itself is a little bit

unconventional, let's say.

Before the Court is an individual who has extremely strong roots to the community. The rap sheet that Pretrial Services was kind enough to provide, and glossed over by the government, shows something that is very telling. Those are facts, and what is that that's very telling. The last criminal conviction that this man has suffered is from 2011, nine years ago. Nine years ago. That was a misdemeanor. Before that, you have a felony conviction that goes back 18 years.

How is that relevant for today's hearing? It's relevant because despite this specter and dark shadows of violence and knives and guns and Aryan Brotherhood and supremacy and all that stuff, you don't have a single assault, you don't have a single possession of a firearm, you don't have anything in nine years. Those are facts.

Now, what the government proffers to the Court seeking detention in a case that routinely gets bail, by the way, and you know that, is not proven fact. And it is surprising that a citizen of this country, that the federal government, with surveillance and investigation and wiretaps, didn't charge those facts of crimes as a pattern of racketeering.

So I say to the Court that this is a perfect case for bail. You have a surety, this man's father, his name is

Fred Johnson. We provided all of our bail packet to the government yesterday. Fred Johnson, again, Mr. Johnson's father, him and I have spoken since Monday.

Todd Johnson has very strong family support. I spoke to his common-law wife yesterday, the day before. They are all supporting Mr. Johnson, and they have very, very strong family ties. In addition, I received a phone call from a retired judge who knows the family, and he was willing to help in any way he could.

Now, Mr. Johnson is presumed to be innocent right now, the weight of the evidence is the least of the factors. The issues are: Is he going to flee the community if released? There is not one iota of evidence that he ever has jumped bail. At the same time, I didn't -- maybe the government is also asking detention based upon danger to the community, a clear and convincing standard. I dare say they are nowhere near the proof required for that type of request.

So what we propose to the Court is almost identical to what Pretrial Services, experienced people who do these things every day. They know about white supremacy. They know about violence. They know about all these things. They recommend, in full contrast to this government's allegations, a $10,000 bail supported by a financially -- a financially responsible person. 10,000.

I would ask the Court to set a personal surety bond

of whatever amount the Court thinks is appropriate, secured by the father's own signature as a family relative. Very reliable. He has $135,000 in savings right now. I have the bank records to show that. He also is the owner of his own home. The home is worth, conservatively speaking, $750,000. And it's fully owned.

So Fred Johnson, the father, has almost a million dollars. And I dare say because he is the father, he would be a good surety. At the same time, the Pretrial Services report documents how Todd Johnson has been employed for a very long time at the same employment, and he has -- there is not one negative instance in five years.

So I really believe this is a case for bail, and we'd ask the Court set bail.

MS. WU: Your Honor, may I respond to one point?

THE COURT: Yes.

MS. WU: Counsel spoke at great length about the fact that Mr. Johnson is charged only with aiding and abetting with respect to the felon in possession, and the facts of that I think bear discussing.

Mr. Johnson was contacted about a potential gun deal that will require Mr. Johnson's assistance because the firearms, the four firearms were located at somebody else's house. So Mr. Johnson was tasked with going to get those firearms from that individual's house and then pass them off

to the defendant No. 1, who remains at large today.

But defendant No. 1 was the one that was -- after the exchange had taken place, was the one that was in possession of the firearms as he was driving away from the hand-off. So while he is charged as an aider and abettor, it is certainly not due to a minimal participation in this illegal gun transaction.

And, you know, the only other thing I would say is that the United States is here to present based on proffer, just like the defense is. And so, you know, we are -- both sides are allowed and both sides have alleged facts that were not before the Pretrial Services officer but for which both sides have a good-faith basis to make those proffers.

And as I have stated, the United States' proffers are based on actual recordings of Mr. Johnson through interceptions, based on physical surveillance of the events that I have described and based on controlled purchases that were conducted in furtherance of this investigation, which have been audio and video recorded where possible.

So to that extent, the United States would just like to make sure the Court understands the basis for the government's proffer on all the facts.

MR. CORTEZ: Very briefly.

Your Honor used to be an Assistant U.S. Attorney in the very office that government Counsel now works. You're

completely familiar with all those concepts. That changed nothing. This man is presumed innocent. The weight of the evidence which she keeps relying upon by spicing it up with Aryan Brotherhood and white supremacists, it changes nothing.

He is not charged with those serious crimes. They could have charged that. You know that; you were an Assistant U.S. Attorney.

That's all I have.

THE COURT: So follow-up question for you, Mr. Cortez.

Where do you propose or contemplate that your client will reside if I were to set conditions of release?

MR. CORTEZ: He will reside at his own home with his common-law wife and children. I believe he may -- I'm not completely sure about whether he owns his property or not. I have information that he may have. But he's been living there for a very long time, and Pretrial Services has already confirmed that.

THE COURT: That's in San Diego County?

MR. CORTEZ: Yes, sir.

THE COURT: Thank you, Counsel.

MR. CORTEZ: Thank you, your Honor.

THE COURT: I've heard a presentation from both and I am prepared to rule.

As a preliminary matter, I do accept the proffer by

Ms. Wu, and I do consider, even though not charged, the other issues that she believes pertain to dangerousness to the community. However, having said that, I am denying the United States' motion. I think there are conditions of release that I could set that would, No. 1, reasonably assure Mr. Johnson's appearance in court as ordered; and, secondly, protect the safety of the community.

The conditions, however, are going to be, I should say, somewhat onerous.

MR. CORTEZ: I understand.

THE COURT: So Mr. Johnson, please pay careful attention, sir. I'm going to give you your conditions of release.

THE DEFENDANT: All right.

THE COURT: You are not to violate any federal, state or local law.

You are to cooperate in the collection of a DNA sample.

You are to appear in court as ordered and surrender to serve any sentence.

You are not to possess or attempt to possess a firearm, destructive device or other dangerous weapon.

You are not to use or possess a narcotic drug or another controlled substance without a lawful medical prescription, and you may not use marijuana at any time under

any circumstances.

You are to report to the U.S. Pretrial Services office within 24 hours of your release and thereafter as they direct, and you are to follow all their directions.

You are to advise the Court or Pretrial Services in writing of your current address and phone number, and any changes to your address, residence address or phone number before you make them.

You are to read and understand the pretrial release order that I am signing, and you are to read, understand and sign the Advice of Penalties and Sanctions form.

Your travel is restricted to San Diego County, and you are not to enter the Republic of Mexico at any time for any reason during the pendency of your case.

You are to execute an appearance bond in the amount of 50, five zero, thousand dollars, that is secured by a trust deed to the United States on real property approved by a federal judge.

You are to actively seek or continue full-time employment or schooling or a combination of both.

You are to reside with a family member or at a residence approved by the Pretrial Services office.

You are to surrender any valid passport to the Pretrial Services office and not thereafter obtain a passport or other international travel document.

You are to submit to psychological or psychiatric treatment at Pretrial Services discretion.

In light of the history of trafficking and some possession charges, I am imposing a condition of drug testing no more than eight times per month and/or outpatient substance abuse therapy and counseling as directed by the Pretrial Services office.

I'm directing you, sir, to participate in a location-monitoring program and comply with its requirements as directed under the following component and technology, and that's home detention.

You are restricted to your residence at all times except for Pretrial Services approved absences for employment, education, religious services, medical, substance abuse, mental health treatment, attorney visits, court appearances, court-ordered obligations and other activities.

I am leaving the technology by which you'll be monitored and that condition of detention will be enforced to the discretion of Pretrial Services.

I'm also ordering as a special condition that you not use a computer or smartphone and that you not engage in any activities on social media.

So those are your conditions of release, sir. Is there anything further, Ms. Wu?

MS. WU: Yes, your Honor. The government would

request --

THE DEFENDANT: Thank you, your Honor.

MR. CORTEZ: Your Honor -- hold on.

THE COURT: We're not done yet, Mr. Johnson.

Ms. Wu.

MS. WU: The government would request two additional conditions to be added. So the first is that ammunition be added to the list of things that he cannot possess, starting with firearms, et cetera.

And the second is that, based on the proffer that the United States has given to this Court, I believe that it is appropriate to impose a gang condition, that he not be allowed to associate with any known gang members, including but not limited to SPS, Aryan Brotherhood, Lakeside Gangsters, Henchmen, Peckerwoods, et cetera.

MR. CORTEZ: I would oppose that condition on constitutionality grounds. It's too vague and too general. What, is he supposed to ask everyone if they belong to any of those organizations?

MS. WU: As Mr. Cortez knows, this is a pretty standard gang condition that is imposed by anyone that is known to be a gang member.

MR. CORTEZ: As government counsel knows, I don't care. That's unconstitutional. And I fought that issue before.

MS. WU: Unfortunately, he has not won that --

MR. CORTEZ: This is not a conversation between us. We'll talk later.

THE COURT: All right. I do think the condition -- I am going to impose those conditions. No possession of ammunition, no association with known gang members. I do think that condition should be self-enforcing based on the home detention and the close monitoring by Pretrial Services.

MR. CORTEZ: Right. I have one question, your Honor. Did you say he's not allowed to use a phone?

THE COURT: A smartphone.

MR. CORTEZ: Smartphone?

THE COURT: No smartphone usage where he could access the internet.

MR. CORTEZ: I understand that. We're going to have -- he has to have a phone for work, to communicate with me and such. You just don't want him using the internet; is that it?

THE COURT: I'm sorry?

MR. CORTEZ: You don't want him using the Internet; is that --

THE COURT: Correct. No internet usage.

MR. CORTEZ: Okay. And we have a next court hearing for motions?

THE COURT: So the next court date that I have on my calendar, Mr. Cortez, is December 14th at 11:00 a.m. before Judge Houston for a motion hearing.

MR. CORTEZ: Yes, sir.

THE COURT: Anything further, Ms. Wu?

MS. WU: No, your Honor.

THE COURT: Mr. Cortez, anything further, sir?

MR. CORTEZ: No, sir. Thank you.

THE COURT: Thank you.

MS. WU: I'm sorry. One clarification, your Honor. Did you say this was a real property bond or personal appearance bond secured by real property?

THE COURT: It's a personal appearance bond secured by real property.

MS. WU: Thank you, your Honor.

MR. CORTEZ: Thank you.

Mr. Johnson, call me, please. Take care.

THE DEFENDANT: Thank you very much, sir. And thank you, your Honor.

Are we all done?

THE COURT: Yes. You are all done, Mr. Johnson. Thank you, sir.

THE DEFENDANT: Thank you, your Honor.

(Proceedings concluded at 11:22 a.m.)

-- oo0oo --

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Cameron P. Kircher 12-9-20
Transcriber Date